UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
JOEL B. ROSEN
UNITED STATES MAGISTRATE JUDGE

MITCHELL H. COHEN COURTHOUSE
1 John F. Gerry Plaza, Room 206
CAMDEN, NJ 08101-0887
(856) 757-5446

November 7, 2005

Norman L. Scott
211 Keats Drive
Sicklerville, NJ 08081

RE:   Scott v. Marriott Residence Inn
      Civil No. 04-5915 (JBS)

**LETTER OPINION AND ORDER**

Dear Mr. Scott:

**I. Introduction**

Presently before the court is the plaintiff's application for the appointment of legal

counsel pursuant to 28 U.S.C. §1915(e). The plaintiff is not incarcerated and has been granted

leave to proceed *in forma pauperis*.

The plaintiff initiated this action pursuant to the Civil Rights Act of 1866 (as modified in

1991), 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A.

10:5-12, *et seq.*, alleging that the defendant, Innkeepers Hospitality Management ("Innkeepers"),

deprived him of his § 1981 and NJLAD rights by discriminating against him on the basis of his

race, subjecting him to a hostile work environment on the basis of his race, and failing to take

proper remedial actions to resolve the discrimination.

After careful consideration of the plaintiff's submissions and other record documents and

for the reasons noted below, the plaintiff's motion for appointment of counsel shall be **DENIED**.

1

## II. Factual and Procedural History

The facts as discerned from the plaintiff's complaint are as follows. The defendant, Innkeepers, hired the plaintiff, an African-American male, as a Night Auditor on or about June 4th, 2002. (Compl., ¶¶ 1-5).

The plaintiff alleges that during the course of his employment, the defendant discriminated against him on the basis of his race, specifically in regards to training, rate of pay, discipline and supervision. (Id. at ¶ 6). The plaintiff also alleges that through disparate treatment, interference with his personal property, and denial of necessary training and equipment on account of his race, the defendant subjected the plaintiff to a hostile work environment. (Id. at ¶ 7). Additionally, the plaintiff alleges that the defendant, upon notification of these problems, failed to provide a remedy. This failure caused the plaintiff to suffer loss of earning capacity, loss of benefits, pain and suffering, emotional upset, mental anguish and loss of life's pleasures. (Id. at ¶¶ 8-10).

On December 2, 2004, the plaintiff filed the instant complaint alleging that the defendant's acts and omissions violated his rights under 42 U.S.C. § 1981 and the NJLAD. The defendant denies these allegations and avers, *inter alia*, that it terminated the plaintiff for legitimate non-discriminatory reasons.[1] By order dated January 26, 2005, the district court granted the plaintiff *in forma pauperis* status. On May 23, 2005, the plaintiff submitted an application for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). In support of his application for appointment for counsel, the plaintiff contends that he is unable to afford an

---

[1]The complaint does not specifically assert that the plaintiff was terminated or the date of the termination.

2

attorney. The plaintiff further contends that he is worried that "opposing counsel may try

something unethical in the instant matter."

The defendant was served with process on February 11, 2005, and answered with separate

defenses on March 3, 2005.

### III. <u>Analysis</u>

#### A.    <u>Appointment of Counsel Under 28 U.S.C. §1915(e)</u>

The court may, pursuant to §1915(e), request an attorney to represent an indigent plaintiff

in a civil action.  Section 1915 provides in relevant part that:

> (1) [t]he court <u>may</u> request an attorney to represent any person unable
> to afford counsel.  (2) Notwithstanding any filing fee, or any portion
> thereof, that may have been paid, the court shall dismiss the case at
> any time if the court determines that-(A) the allegation of poverty is
> untrue; or (B) the action or appeal - (i) is frivolous or malicious; (ii)
> fails to state a claim on which relief may be granted; or (iii) seeks
> monetary relief against a defendant who is immune from such relief.

§1915(e)(emphasis added).  However, the appointment of counsel under §1915(e) is a privilege,

not a statutory or constitutional right of the litigant.  <u>Purnell v. Lopez</u>, 903 F. Supp. 863, 864

(E.D. Pa. 1995).  Moreover, a court's power to appoint counsel pursuant to §1915(e) lies in the

sole discretion of the court.  <u>Parham v. Johnson</u>,126 F.3d 454, 457 (3d Cir. 1997); <u>see also</u>,

<u>Tabron v. Grace</u>, 6 F.3d 147, 155 (3d Cir. 1993).  Appointment of counsel may be made at any

point during the litigation or by the court *sua sponte*.  <u>Tabron</u>, 6 F.3d at 156.  In exercising its

discretion under §1915(e), the court is required to determine whether the claim has "some merit

in fact and law" as a preliminary matter.  <u>Parham</u>, 126 F.3d at 457.

If, as a preliminary matter, the court finds the action is not frivolous and has merit, then

several factors are taken into consideration:

3

(1)     plaintiff's ability to present his or her own case;
(2)     the complexity of the legal issues;
(3)     the degree to which factual investigation will be necessary
        and the ability of the plaintiff to pursue such investigation;
(4)     the amount a case is likely to turn on credibility
        determinations;
(5)     whether the case will require the testimony of expert
        witnesses, and;
(6)     whether the plaintiff can attain and afford counsel on his or
        her own behalf.

Tabron, 6 F.3d at 156-57.  This list is not exhaustive, nor is any one factor determinative.  Id. at

157.  See also Parham, 126 F.3d at 458; Hamilton v. Leavy, 117 F.3d 742, 749 (3d Cir. 1997);

Hetzel v. Swartz, 917 F. Supp. 344, 346 (M.D. Pa. 1996); Robinson v. Horn, 921 F. Supp. 293,

295 (E.D. Pa. 1996); Jones v. Hinton, 153 F.R.D. 570, 571 (E.D. Pa. 1994).  These factors ensure

that courts will only appoint counsel in non-frivolous matters.  Parham, 126 F.3d at 461.

        Courts will only consider appointment of counsel where a plaintiff's case appears to have

merit and most of the aforementioned factors are met.  Parham, 126 F.3d at 461.

        1.     The Plaintiff's Ability to Present His or Her Own Case

        The first factor for consideration is the plaintiff's ability to present his or her own case.

In making this determination, the court should consider the plaintiff's literacy, education, prior

work experience, and prior litigation experience.  Tabron, 6 F.3d at 156.  A plaintiff's ability to

understand English is also relevant to his ability to present his case.  Id.  Finally, if the plaintiff is

incarcerated, the restraints placed upon him by virtue of his confinement should be considered in

determining his ability to represent himself.  Id.  This includes the availability of typewriters,

photocopiers, telephones and computers.  Id.

        2.     The Complexity of The Legal Issues

The second factor for consideration is the complexity of the legal issues presented.  In making this determination, the court is more inclined to appoint counsel when the legal issues are complex.  Id.  Where the law is not clear, it will best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.  Id.  However, comprehension alone does not equal the ability to translate understanding into presentation. Parham, 126 F.3d at 459.  Although the ultimate issue may be comprehensible, the court must appreciate the complexity of the discovery involved.  Id.

     3.     <u>The Degree to Which Factual Investigation Will Be Necessary and the Ability of the Plaintiff to Pursue Such Investigation</u>

The third factor for consideration is the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation.  In making this determination, the court may consider the extent to which prisoners and others suffering confinement face problems in pursuing their claims.  Tabron, 6 F.3d at 156.  Further, the court should be aware of an indigent plaintiff's possible difficulties understanding complex discovery rules.  Parham, 126 F.3d at 460.  Thus, where the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted. Tabron, 6 F.3d at 156.

     4.     <u>The Amount a Case is Likely to Turn on Credibility Determinations</u>

The fourth factor for consideration is whether a case is likely to turn on credibility determinations.  Though many cases turn on credibility determinations, the court should focus on whether the case is largely based on the word of one side against the word of the other side. Parham, 126 F.3d at 460.

5.      Whether the Case Will Require the Testimony of Expert Witnesses

The fifth factor for consideration is the extent to which  expert testimony may be required.  Appointed counsel may be warranted where the case will require testimony from expert witnesses. Tabron, 6 F.3d at 156.

6.      Whether the Plaintiff Can Attain and Afford Counsel on His Own Behalf

The sixth and final factor for consideration is plaintiff's financial ability to attain and afford counsel on his own behalf.  Parham, 126 F.3d at 461.

**B.      The Merit of the Plaintiff's Claim**

While it is not this court's function in the context of a motion for appointment of counsel to reach the merits of the plaintiff's claim, Tabron requires that this court consider whether the plaintiff's claim has "some merit in fact and law" and is not "frivolous or malicious." Tabron, 6 F.3d at 155; 28 U.S.C. § 1915(d).

Based on the record before this court, the plaintiff's claim appears to have threshold merit. The plaintiff states four causes of action against the defendant, two under 42 U.S.C. § 1981 and two under the NJLAD.

**1. Plaintiff's Claims Under § 1981**

a. Plaintiff's Claim of Racial Discrimination Under § 1981.

Courts analyze employment discrimination claims under 42 U.S.C. §1981[2] by the same standard

---

[2]  Section 1981 provides as follows:
(a) Statement of equal rights
        All persons within the jurisdiction of the United States shall have
        the same right in every State and Territory to make and enforce
        contracts, to sue, be parties, give evidence, and to the full and equal

as claims under Title VII of the Civil Rights Act of 1964.  <u>Schurr v. Resorts Int'l Hotel, Inc.</u>, 196

F.3d 486, 499 (3d Cir. 1999).  Under this standard, derived from <u>McDonnell Douglas Corp. v.

Green</u>, 411 U.S. 792 (1973) and its progeny, a prima facie case consists of three elemental

allegations: "(1) that [the plaintiff] is a member of a protected class, (2) that [the plaintiff] was

subject to an adverse employment action, and (3) that similarly situated members of other racial

classes were treated more favorably." <u>Tucker v. Merck & Co., Inc.</u>, 131 Fed.Appx. 852, 854-55

(2005).  The Supreme Court has defined a "tangible employment action" to include the

following:

> A tangible employment action constitutes a significant change in
> employment status, such as hiring, firing failing to promote,
> reassignment with significantly different responsibilities, or a
> decision causing a significant change in benefits.... A tangible
> employment action in most cases inflicts direct economic harm.

<u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 761-62 (1998).  And the Third Circuit has

defined an "adverse employment action" under Title VII as "an action by an employer that is

serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges

of employment." <u>Tucker</u>, 131 Fed.Appx. at 855 (quoting <u>Storey v. Burns Int'l Sec. Serves.</u>, 390

---

> benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of
> every kind, and to no other.
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts"
> includes the making, performance, modification, and termination
> of contracts, and the enjoyment of all benefits, privileges, terms,
> and conditions of the contractual relationship.
> (c) Protection against impairment
> The rights protected by this section are protected against
> impairment by nongovernmental discrimination and impairment
> under color of State law.

F.3d 760, 764 (3d Cir. 2004)).

Mr. Scott has alleged that he is an African-American male.  Mr. Scott also alleges that he suffered an adverse employment action through circumstances including discipline, supervision, and his rate of pay.  Finally, while thin, the complaint if liberally construed alleges that his treatment by the defendant employer was disparate.  As the case is in its early stages, and as the defendants have not opposed the motion, the defendants have not yet factually asserted a legitimate business reason for the alleged treatment, thus, the familiar <u>McDonnell Douglass/Burdine/Hicks</u>[3] burden-shifting analysis does not come into play in the court's consideration of the merits of the plaintiff's case at this time.[4]  Consequently, for the purposes of this motion, the court finds that the plaintiff has asserted a prima facie case of discrimination under 42 U.S.C. §1981.

b. Plaintiff's Claim of a Hostile Work Environment Under § 1981.

As with a claim of racial discrimination under § 1981, a claim of a hostile work

---

[3] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>St. Mary's Honor Center v. Hicks</u>, 113 S.Ct. 2742 (1993).

[4] In Title VII actions, although the plaintiff bears the ultimate burden of persuasion at all times, the employer has a unique responsibility, more so than in many other causes of action, of rebutting the plaintiff's prima facie discrimination claims.  <u>See</u>, <u>e.g.</u>, <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  As Lindemann and Grossman's erudite treatise  summarizes, "[o]nce the plaintiff creates an inference of discrimination by setting forth a prima facie case, the burden shifts to the employer to articulate, through the introduction of admissible evidence, a 'legitimate, nondiscriminatory reason' for the adverse action in order to rebut the inference of discrimination.  The employer's burden at this stage is only one of going forward, of adducing evidence[.]"  1 B. Lindemann & P. Grossman, Employment Discrimination Law 17 (3d ed.1996) (hereinafter Lindemann & Grossman) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)).

8

environment under § 1981 follows the McDonnell Douglas/Burdine/Hicks burden shifting

paradigm. See Burdine, 450 U.S. at 252. To establish a prima facie case, the plaintiff must show

"that (1) he suffered intentional discrimination because of his [race]; (2) the discrimination was

pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a

reasonable person of the same protected class in his position; and (5) there is a basis for vicarious

liability." Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001); Aman v. Cort Furniture Rental

Corp., 85 F.3d 1074, 1081 (3d Cir. 1996); see also Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 116 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) ("In determining

whether an actionable hostile work environment claim exists, we look to 'all the circumstances'

including 'the frequency of the discriminatory conduct, its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether is unreasonably interferes

with an employee's work performance").

    In Cardenas, a Mexican-American filed suit against the state and various state officials on

the grounds that, because of his ethnicity, he was subjected to disparate pay, retaliation, and a

hostile work environment. 269 F.3d at 253-54. The Court held that the plaintiff was able to

demonstrate a prima facie case of hostile work discrimination because he offered proof of oral

and written ethnic slurs and provided evidence that might lead a jury to believe "ostensibly

nondiscriminatory incidents" were really charged by an "ethnic animus." Id. at 262. For example,

the Court noted that disproportionate assignments to a minority unit with a minority supervisor

could be racially motivated. Id. Additionally, "consistently lower performance evaluations of a

protected class member as compared to non-protected co-workers" may also indicate an ethnic

animus. Id. Therefore, the plaintiff had met the requirements of a prima facie case of racial

9

discrimination. Id. at 264.

Under this rubric, Scott has stated a prima facie claim of hostile work environment under § 1981.  Scott alleges that he was subjected to discriminatory intent through disparate treatment, interference with his property, and denial of training. He alleges that these actions caused him to suffer loss of earnings as well as pain and suffering and mental anguish. These allegations fulfill the requirements necessary to establish a prima facie claim.

### 2. Plaintiff's Claims Under the  NJLAD

#### a. Plaintiff's Claim of Racial Discrimination Under the NJLAD.

The New Jersey Supreme Court has held that causes of actions asserted under the NJLAD should also follow the McDonnell Douglas/Burdine burden-shifting framework. Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97 (1990) ("In outlining approaches and infusing discrimination claims under the LAD with substantive content, we have adopted the Supreme Court's analysis of unlawful discrimination claims brought under Title VII of the Civil Rights Act of 1964"); Mandel v. USB/Painewebber, 373 N.J. Super.55, 69 (App. Div. 2004).

A plaintiff can establish a prima facie case of racial discrimination by showing "'(1) that he or she is a member of a protected class; (2) that he or she was qualified for the job; (3) that he or she was negatively affected by the defendant's employment decisions; and (4) that he or she was treated less favorably than employees not within the protected class.'" Mandel, 373 N.J. Super. at 70 (quoting Murphy v. Hous. Auth. & Urban Redevelopment Agency of Atlantic City, 32 F. Supp. 2d 753, 763 (D.N.J. 1999), aff'd, 208 F.3d 206 (3d Cir. 2000)).

Mr. Scott's claim of racial discrimination under the NJLAD also appears to be meritorious. As noted above, Mr. Scott is a member of a protected class and he alleges that he

was qualified for the job. He claims that the defendant treated him less favorably through discipline and supervision, rate of pay, and training. Moreover, he claims that he suffered mental anguish, loss of earnings and earning capacity and pain and suffering as a result of the "less favorable treatment" he received while working for the defendant. Therefore, the plaintiff has sufficiently alleged a prima facie case of race discrimination under the NJLAD.

<u>b. Plaintiff's Claim of a Hostile Work Environment Under the NJLAD.</u>

As with his claim for racial discrimination under the NJLAD, Mr. Scott's claim of a hostile work environment under the NJLAD is also subject to the <u>McDonnell Douglas/Burdine</u> burden shifting standard. <u>Grigoletti</u>, 118 N.J. at 97. To establish a prima facie case of a hostile work environment, and to meet the first burden of the <u>McDonnell Douglas/Burdine</u> standard, Mr. Scott must establish "that defendant's conduct (1) would not have occurred but for [his] race; and the conduct was (2) severe or pervasive enough to make a (3) reasonable African-American believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." <u>Watkins v. Nabisco</u>, 224 F.Supp.2d 852, 864 (D.N.J. 2002); <u>see also</u> <u>Coefield v. GPU</u>, 125 Fed. Appx. 445 (3d Cir. 2005) (unpublished decision), <u>Hargrave v. County</u>, 262 F.Supp.2d 393, 411 n.7 (D.N.J. 2003).

Again, the plaintiff has alleged a prima facie claim of a hostile work environment under the NJLAD. Mr. Scott argues that he was subjected to disparate treatment, interference with his personal property, and denial of necessary training and equipment. He alleges that this treatment was severe or pervasive enough to make a reasonable African-American believe that the working environment is hostile. For the purposes of this motion, the plaintiff has met his burden under the <u>McDonnell Douglas/Burdine/Hicks</u> standard and has asserted a prima facie claim of a hostile

11

work environment.

**C.     Litigation Management Factors**

As this court finds that the plaintiff's case has the threshold merit required by Tabron, this court must now consider certain litigation management factors to determine whether this claim warrants appointment of counsel. See Parham, 126 F.3d at 457. That is, this court shall consider whether the plaintiff is incapable of presenting his own case. In making this determination, discussed supra, this court must take into consideration the complexity of the case, related matters of proof, presentation of testimony, and the difficulties of discovery.

The plaintiff alleges that he is unable to continue *pro se* because he lacks funds and because he is concerned that the opposition will try something unethical in trying this case. As for the latter assertion, the plaintiff supplies the court absolutely no foundation for any finding that counsel for the defendant may act unethically.  Indeed, as an officer of the court, counsel is bound to conduct himself both ethically and professionally.  Moreover, a disparity in resources is not a problem which is exclusive to pro se litigants proceeding against a corporation.  The plaintiff's lack of financial resources is not sufficient to warrant appointment of counsel.

Additionally, the plaintiff has demonstrated his ability to present his own case. The complaint is well-worded and typed. Furthermore, the plaintiff successfully filed for *in forma pauperis* status. His other filed documents are also legibly handwritten or typewritten and clear and concise.

The plaintiff's case is not overly complex. Moreover, the plaintiff is not incarcerated and can avail himself of the services the bar offers. The court recognizes that the *pro se* litigant will have more difficulty pursuing his claim than a trained attorney; however, as the Third Circuit

12

remarked,

> We must take note of the significant practical restraints on the
> district courts' ability to appoint counsel: the ever-growing number
> of . . . civil rights actions filed each year in the federal courts; the
> lack of funding to pay appointed counsel; and the limited supply of
> competent lawyers who are willing to undertake such
> representation without compensation . . . We also emphasize that
> volunteer lawyer time is extremely valuable. Hence, the district
> courts should not request counsel under 1915 (d) [now subsection
> e] indiscriminately.

Tabron, 6 F.3d at 157. This court, unfortunately, cannot appoint a volunteer attorney to provide

aid to the plaintiff.

Although the court cannot at this time appoint counsel, as indicated above, the plaintiff

does have very limited financial resources. Thus, this court encourages the plaintiff to apply to

South Jersey Legal Services for legal aid. South Jersey Legal Services is a public interest legal

aid organization which provides legal assistance in compelling cases; they can be contacted at:

South Jersey Legal Services
745 Market Street
Camden, NJ 08102-1117
(856)964-2010.

New Jersey Legal Services, of which South Jersey Legal Services is a member organization,

maintains offices across the state. Further information may be found at

http://www.lsnj.org/index.htm or by calling toll-free 1-888-576-5529.

The court does not mention South Jersey Legal Services because it should or will provide

assistance; rather, the court mentions it as a possible resource for legal assistance to the plaintiff.[5]

---

[5]Nothing stated in this opinion shall be construed as an order that South Jersey Legal
Services must aid the plaintiff, or that the plaintiff's claim has anything other than threshold
merit.

In addition to legal services, the plaintiff can contact the local bar association referral service, Camden County Bar Association Lawyer Referral Service, 1040 N. Kings Highway, Suite 201, Cherry Hill, NJ 08034, a service established by the bar association to aid plaintiffs in identifying and retaining local attorneys.

**IV.    Conclusion**

Accordingly, for the reasons set forth above, the plaintiff's motion for the appointment of counsel is hereby **DENIED**.

The attached order shall be entered.

Very truly yours,


_____  /s Joel B. Rosen_____
                                       JOEL B. ROSEN
                                       United States Magistrate Judge

cc:    Honorable Jerome B. Simandle
       Marnie Boyle, Courtroom Deputy
       Douglas Diaz, Esquire
       John P. Quirke, Esquire
       Vanessa A. Worm, Esquire

Doc. No. 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

Norman Scott, Pro Se,                    :

        Plaintiff,                    :

        v.                           :            Civil No. 04-5915 (JBS)

Marriott Residence Inn,                  :

        Defendant.                    :

**ORDER**

This matter having come before the court upon the motion of Norman Scott, plaintiff pro se, for appointment of counsel pursuant to 28 U.S.C. §1915(e); and the court having considered the submissions of the plaintiff; and the court having further considered the criteria and analysis set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993) and Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997); and for the reasons noted in the letter opinion entered on this date;

**IT IS** this 7th day of December 2005 hereby

**ORDERED** that the plaintiff's motion for appointment of counsel pursuant to 28 U.S.C. §1915(e) shall be **DENIED**.

/s Joel B. Rosen
JOEL B. ROSEN
United States Magistrate Judge

15